In re COON.
Patent Appeal No. 3296.

Court of Customs and Patent Appeals.
May 21, 1934.

Sturtevant & Mason, of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the United States.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner, rejecting, for want of invention in view of the prior art, the sole claim in the case, being claim 6 of appellant's application, filed May 20, 1929. Said claim 6 reads as follows:

"6. A package for ready to use pie crust dough comprising a dough mass, an inner wrapper of fabric material saturated with an edible acidulous aqueous agent, folded snugly about the mass with the edge portions thereof interfolded and lapped so that the entire surface of the dough mass is in intimate contact with said inner wrapper for preventing souring, spoilage, bacteria and fungous growth thereon, an outer moisture and oil proof wrapper folded about the wrapped mass and enclosing the same, and a container within which the dough mass with the wrappers thereon is placed, said container being dimensioned so as to hold the wrappers in place and the fabric wrapper in contact with the dough."

The references relied upon are: Byrnes, 1,642,804, September 20, 1927; Bles (British), 4,765, of 1879.

The alleged invention here involved is described briefly in the Examiner's statement as follows:

"The present application relates to a package of ready to use pie crust dough. In the preparation of this package, a mass of pie crust dough is wrapped in a piece of fabric of suitable size which has been saturated with an acidulated acqueous agent such as vinegar and the wrapped dough encased in an outer wrapper which is impervious to grease and moisture. The inner wrapper, saturated with the acidulous agent serves to prevent the formation of mould on the surface of the dough while the outer wrapper retains the moisture in the dough mass. The wrapped dough is then placed in a container, which is preferably of such dimensions as to snugly hold the wrappers in place about the dough mass."

The Examiner rejected the appealed claim on the reference Byrnes in view of the British patent to Bles. The Board of Appeals affirmed the holding of the Examiner, one member of the Board, however, filing a dissenting opinion.

The patent to Byrnes relates to a method of packing an unbaked layer of pie dough. This method, briefly, is as follows: The unbaked layer of pie dough is placed upon one-half of a sheet of oiled paper, said sheet consisting of two circular halves which are joined together in the middle of the sheet; the remaining half of the sheet is then folded over so as to cover the layer of dough as it rests on the first half of the sheet. The edges of the two circular portions of the sheet are then crimped or folded over so as to completely inclose the layer. The wrapped layer is thereupon placed in a flat circular carton or container, consisting of a body and lid. This carton, containing the wrapped layer, is then wrapped in moistureproof paper, which is folded and sealed.

The foreign patent to Bles relates to the treatment of woven cotton fabrics known as mulls or butter cloths, in which butter is kept or packed for transmission or sale, with an antiseptic, "in order to prevent the butter contained therein from becoming rancid during a voyage, or if kept for a long time." The specification further states that " * * * it will be evident that cotton or other cloth so treated may be used with advantage for packing other articles of food, or other organic substances liable to putrefaction or decay. *. * *" The specification goes on to detail

the method of treating such cloths by the application of salicylic acid solution thereto, either during the bleaching process or by subsequent immersion. It also recites that:

" * * * In treating grey cotton cloth, it is first bleached in the ordinary manner by liming, steeping, souring, boiling and washing, or it may be bleached by any other known process, and then before drying it is passed through a solution composed of about three pounds of salicylic acid to about seventeen gallons of water, *after which it is dried by passing over tin cylinders, heated by steam.*" (Italics ours.)

The decision of the Board, upon the point of the drying of the fabric, states:

"It is further objected that it cannot be properly held that the cloth of Bles can be said to be saturated in view of the fact that it is subsequently dried. In this connection we will refer to appellant's specification, page 3, lines 17–23 as follows:

" 'The inner wrapper 4 consists of a piece of muslin or other cloth which has been saturated with an acidulated aqueous agent. I have obtained excellent results by the use of vinegar, citric acid and horseradish. This wrapper is used while still fresh *but nearly dry,* as any moistening of the surface of the dough is undesired.' [Italics ours.]

"It has not been shown that the acid would be inoperative to effect the desired result even if it were dried as in the Bles patent and appellant herself uses it 'nearly dry.' It is believed that there would be sufficient moisture in the dough or butter to moisten the acid sufficiently to make it effective."

We think the proper interpretation of appellant's disclosure is that the saturated fabric described by her is not completely dried as in the reference Bles, but that, after being partially dried, it is left in a moist condition saturated with an edible acidulous aqueous agent, as called for by the rejected claim. It therefore materially differs from the fabric shown by Bles, which is obviously completely dried, leaving the salicylic acid introduced into the fabric in a solid form. This seems clear from the fact that the object of Bles was to produce a fabric which could be sold and used at any time after its manufacture, while appellant recites that the fabric described by her is to be used "while still fresh but nearly dry."

The Board further held that, conceding this difference between the fabrics to be true, there was no patentable distinction between the fabric of Bles and that of appellant, for the stated reason that, if the fabric of Bles

was completely dry, "there would be sufficient moisture in the dough or butter to moisten the acid sufficiently to make it effective." The Board evidently overlooked the fact that, if moisture was withdrawn from the dough sufficiently to moisten the fabric, it might materially impair the quality of the dough for use as pie crust.

That the package claimed by appellant is novel and useful is conceded, and we do not think that the references negative the exercise of the inventive faculty in its production.

We are of the opinion that the Board of Appeals erred in rejecting the claim in issue, and its decision is reversed.

Reversed.

HATFIELD, Associate Judge, did not participate.